UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

HERBERT E. ROBERTSON,

    Plaintiff,

    v.                                        CAUSE NO. 3:23-CV-514-JD-MGG

THERESA LIEDTKE, JEN HACKER, and
HUFFORD,

    Defendants.

OPINION AND ORDER

Herbert E. Robertson, a prisoner without a lawyer, filed a complaint and a motion for a preliminary injunction. ECF 2, 4. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Robertson alleges that eight days before his crutch pass was about to expire on November 22, 2022, he notified Nurse Theresa Liedtke that he needed it to be renewed. ECF 2 at 5-6. When he received no response, he says he again sent her a healthcare request for a renewal on the day his crutch pass was to expire. He states that he needed the crutch pass renewed because he was still waiting on an offsite procedure to treat

severe foraminal encroachment, chronic radiculopathy, and severe pain, but the pass was not renewed.[1] On November 23, 2022, the day after his crutch pass expired, Robertson alleges that, without crutches, he fell in the shower, hit his face against the wall, and injured his neck, back, and leg.

These allegations establish an Eighth Amendment claim against Nurse Liedtke for ignoring Robertson's requests for a crutch pass renewal. Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means the defendant "acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). "Deliberate indifference can include the intentional delay in access to medical care. A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or

---

[1] More information about the treatment Robertson received for these medical conditions can be found in *Robertson v. Marthakis*, No. 3:22-CV-887-DRL-JPK (filed Oct. 20, 2022).

unnecessarily prolonged an inmate's pain. *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (internal citation omitted). Robertson plausibly alleges that his spinal issues and pain constituted a serious medical need, and Nurse Liedtke was deliberately indifferent to that need by not responding to the healthcare requests for a crutch pass renewal.

Robertson next alleges he submitted a healthcare request to Nurse Jen Hacker on November 23, 2022, after he returned to his cell following the fall. ECF 2 at 6-7. The healthcare request and accompanying letter detailed how when he fell, he vomited and lost control of his bladder, and how he continued to have a headache, numbness in his back, and a pain level of 9-10. He says Nurse Hacker saw his bruised, swollen face and the difficulty he had walking but did not take him to medical or otherwise provide treatment. He alleges she left him in segregation with no way to get medical help. Robertson may proceed against Nurse Hacker for deliberate indifference to his serious medical needs for not treating his post-fall injuries.

Two days later, on November 25, 2022, Robertson reports that Sergeant Hufford saw the bruising on his face and thigh, and his difficulty walking. ECF 2 at 7. Robertson alleges he told the sergeant about the fall and resulting injuries. The sergeant reported that he called medical and was instructed to bring Robertson to medical immediately, but he did not. Robertson may proceed against Sergeant Hufford for deliberate indifference to his serious medical needs for not taking him to medical as instructed.

Robertson went to medical the next day, November 26, 2022. ECF 2 ay 7-8. The nurse who examined him noted deep bruising on his face and thigh, as well as swelling and severe pain in his back. He told her that he was having severe headaches and that

3

when he hit his head, he vomited and lost control of his bladder. He told her he could hardly walk and was really dizzy. The nurse renewed his crutch pass, gave him a pair of crutches, and administered a Torodol shot for pain. She said she would notify Nurse Leidtke to schedule him for a provider visit immediately because he needed x-rays and provider attention.

There is some uncertainty about what happened next. Robertson alleges he did not see a provider for two weeks, until December 12, 2022, when he saw Nurse Practitioner Karen Fagan. ECF 2 at 8. He further alleges that NP Fagan tried to cover up the delay in seeing him by falsely claiming he refused treatment on November 28, 2022. But in a letter Robertson wrote to the warden, attached to his preliminary injunction motion, he explains that NP Fagan came to his cell on November 28, 2022, for a chronic care visit, but he did not want to have the visit at his cell, where other inmates could overhear his personal medical information. ECF 4-2 at 7. He reports that she promised to reschedule the appointment when the visit could be more private. *Id.* Robertson contests NP Fagan's characterization of their interaction as a "refusal" of healthcare, but the visit establishes that neither Nurse Liedtke nor NP Fagan could be deliberately indifferent to his medical needs for a delay in treatment because a prompt appointment was scheduled.

A few days later, on December 1, 2022, Robertson was transported to an outside facility, where he had a spinal injection to address his severe foraminal encroachment, chronic radiculopathy, and severe pain. ECF 2 at 9. After returning to Indiana State Prison, he developed complications from the procedure and, on December 3, 2022, he

4

was sent to an outside hospital for emergency care because of those complications.[2] Robertson alleges that, in addition to the post-procedure complications, he told the emergency room doctor about his November 23 fall and that he still had suffered from dizziness, a severe headache, and severe pain. He says he was discharged with orders from the emergency room doctor to follow up with neurosurgery.

When Robertson saw NP Fagan on December 12, 2022, he alleges she said she would submit a request for an off-site provider visit for him to see a neurologist or neurosurgeon for his fall symptoms. ECF 2 at 10-11. In March 2023, he submitted a healthcare request because the visit had not yet happened, and he was told that it was scheduled. However, as of May 30, 2023, when he prepared this complaint, Robertson had not been seen by a neurologist or a neurosurgeon. He seeks to hold NP Fagan responsible for the delay in seeing a neurosurgeon. But the complaint does not plausibly allege that she is responsible for the delay. According to the complaint, she submitted the request, and there is nothing to suggest she has control over when the appointment will be scheduled.

Robertson also seeks to hold Health Services Administrator Sherri Fritter liable for not intervening in the alleged unconstitutional treatment he received from NP Fagan. ECF 2 at 11-12. He says he wrote her letters about NP Fagan's refusal to treat him, but she didn't intervene and instead helped to cover up the denial of care. Typically, supervisors are not liable for the unconstitutional acts of those they

---

[2] The details surrounding that surgical procedure and later complications are found in *Robertson v. Burroughs*, No. 3:23-CV-202-RLM-MGG (N.D. Ind. filed Mar. 10, 2023).

supervise. *See Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018) ("Liability under § 1983 is direct rather than vicarious; supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly."). But they can be held liable for a constitutional violation if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir 2019). But since Robertson has not identified a constitutional violation on the part of NP Fagan, he may not proceed against HAS Fritter for not intervening.

Finally, Robertson alleges Centerion Health of Indiana, the private company providing medical care at the prison, should be held liable based on an alleged custom or practice of condoning unconstitutional acts of its employees and of delaying needed medical care in order to cut costs. ECF 2 at 13. There is no general *respondeat superior* liability under 42 U.S.C. § 1983, which means Centerion cannot be held liable for a constitutional violation solely because it employs an alleged wrongdoer. *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 377 (7th Cir. 2020). A private company performing a public function can be sued for constitutional violations under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), but it "cannot be held liable for the unconstitutional acts of their employees unless those acts were carried out pursuant to an official custom or policy." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (citations omitted). The purpose of this requirement is to "distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021). Thus,

to allege a viable *Monell* claim, the plaintiff must describe an official policy or widespread custom that caused him injury. *Grieveson*, 538 F.3d at 771. A plaintiff pursuing a custom theory "must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). The complaint here is limited to the details of Robertson's own treatment without any plausible connection to a more widespread practice. Thus, Centerion will be dismissed.

Robertson also moves for a preliminary injunction, asking that the court order medical staff to follow the ER doctor's order to have him treated by a neurologist or neurosurgeon. ECF 4. "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Mandatory preliminary injunctions – those requiring an affirmative act by the defendant – are ordinarily cautiously viewed and sparingly issued [because] review of a preliminary injunction is even more searching when the injunction is mandatory rather than prohibitory in nature." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quotation marks omitted).

Here, a preliminary injunction is not warranted because Robertson has not plausibly alleged an ongoing denial of constitutionally adequate medical care for his post-fall symptoms. He says he needs an injunction because he has not been seen by a neurologist, but a several-month wait to see a specialist is not out of the ordinary, even outside the prison context. The allegations in the complaint do not plausibly connect the lack of an appointment to any prison employee.

A week after Robertson filed his complaint and preliminary injunction motion, he filed what he titled a Motion Asking for Emergency Assistance. ECF 7. In it, he alleges that at a medical appointment on June 7, 2022, with a non-defendant medical provider at the prison, he was told that there was no neurosurgery or neurologist appointment set for him and that there was no electronic medical record of Robertson seeing NP Fagan on December 12, 2022, or of the emergency room doctor ordering him to be seen by neurosurgery. He alleges that he was told there is no further medical care scheduled for the unbalanced walking, severe headaches, dizziness, or foggy thinking that began after the November 2022 fall.

This motion does not change the analysis of the complaint or the preliminary injunction motion. Robertson may not change the allegations in his complaint through a later filing. Instead, he must file an amended complaint. *See* N.D. Ind. L.R. 15-1(b) ("Amendments to a pleading must reproduce the entire pleading as amended . . .."). This allows the defendants to keep track of the allegations against them in one document. Moreover, the allegations in the emergency filing contradict the medical records Robertson attached to his preliminary injunction. With his motion, he attached

8

the after-visit summary from the emergency department and the summary of his December 12, 2022, medical visit with NP Fagan. ECF 4-2. The summary of his visit with NP Fagan states, "He has been having headaches and urinary retention with urinary catheter in place. He is to follow up with Neuro/anesthesia and Urology to further discuss these complications. Will renew crutch and flag passes x 3 mos. He is to remain in G dorm until follow up with Neuro/Anesthesia and Urology." *Id.* at 6. In light of the evidence that he is receiving care, Robertson's allegations about what a different medical provider told him are insufficient to proceed on the preliminary injunction motion. If Robertson learns more through discovery, he may file an amended complaint with the new information.

For these reasons, the court:

(1) DENIES the motion for a preliminary injunction (ECF 4) and the motion for emergency assistance (ECF 7);

(2) GRANTS Herbert E. Robertson leave to proceed against Nurse Theresa Liedtke in her individual capacity for compensatory and punitive damages for not responding to his medical requests for a crutch-pass renewal in November 2022 in violation of the Eighth Amendment;

(3) GRANTS Herbert E. Robertson leave to proceed against Nurse Jen Hacker in her individual capacity for compensatory and punitive damages for not treating his post-fall injuries on November 23, 2022, in violation of the Eighth Amendment;

9

(4) GRANTS Herbert E. Robertson leave to proceed against Sergeant Hufford in his individual capacity for compensatory and punitive damages for not taking him to medical as instructed on November 25, 2022, in violation of the Eighth Amendment;

(5) DISMISSES all other claims;

(6) DISMISSES Karen Fagan, Sherri Fritter, and Centerion Health of Indiana;

(7) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Hufford at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 2);

(8) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Theresa Liedtke and Jen Hacker at Centurion Health of Indiana, LLC, with a copy of this order and the complaint (ECF 2);

(9) ORDERS the Indiana Department of Correction and Centurion Health of Indiana, LLC, to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information;

(10) ORDERS, under 42 U.S.C. § 1997e(g)(2), Theresa Liedtke, Jen Hacker, and Hufford to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order;

SO ORDERED on June 13, 2023

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT