UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| HERBERT E. ROBERTSON, <br><br> Plaintiff, <br><br> v. <br><br> THERESA LIEDTKE and JEN HACKER, <br><br> Defendants. | CAUSE NO. 3:23-CV-514-HAB |

OPINION AND ORDER

Herbert E. Robertson, a prisoner without a lawyer, is proceeding in this case on two claims. First, he is proceeding against Emergency Medical Technician ("EMT") Theresa Liedtke "in her individual capacity for compensatory and punitive damages for not responding to his medical requests for a crutch-pass renewal in November 2022 in violation of the Eighth Amendment[.]" ECF 8 at 9. Second, he is proceeding "against Nurse Jen Hacker in her individual capacity for compensatory and punitive damages for not treating his post-fall injuries on November 23, 2022, in violation of the Eighth Amendment[.]" *Id.* The defendants filed a motion for summary judgment. ECF 67. Robertson filed a response, and the defendants filed a reply. ECF 70, 72. The summary judgment motion is now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to his medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even

2

though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (cleaned up).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As the Seventh Circuit has explained:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697-698. Negligence, incompetence, or even medical malpractice do not amount to deliberate indifference. *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004).

Furthermore, a prisoner is not entitled to demand specific care, nor is he entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Where the defendant has provided some level of care for a prisoner's medical condition, in order to establish deliberate indifference the prisoner must show that "the defendants' responses to [his condition] were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). A mere disagreement with medical professionals about the

3

appropriate treatment does not amount to an Eighth Amendment violation. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

Section 1983 requires a plaintiff to show more than just a violation of a constitutional right. To recover damages from a defendant, he must also prove that defendant was personally involved in the violation. *See Kuhn v. Goodlow*, 678 F.3d 552, 555-56 (7th Cir. 2012) ("§ 1983 liability is premised on the wrongdoer's personal responsibility"); *see also Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) (a defendant cannot be liable without "a showing of direct responsibility for the improper action[.]"). Therefore, "[a]n individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Kuhn*, 678 F.3d at 556 (citing *Wolf-Lillie*, 699 F.2d at 869). Put otherwise, individuals will only be liable for their own misconduct, unless they are responsible for creating the peril that leads to the constitutional violation. *See Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009).

<u>EMT Liedtke</u>

Robertson is proceeding against EMT Liedtke "for not responding to his medical requests for a crutch-pass renewal in November 2022 in violation of the Eighth Amendment[.]" ECF 8 at 9. Specifically, Robertson alleged in his complaint that he sent Healthcare Request Forms ("HCRF") to EMT Liedtke informing her his crutches pass was set to expire and needed to be renewed, but EMT Liedtke did not respond to the HCRF or renew the crutches pass. *Id.* at 1-2. On November 23, 2022, the day after his crutches pass expired, Robertson fell in the shower without his crutches and injured himself. *Id.* at 2. Robertson provides evidence he submitted HCRF requesting his

4

crutches pass be renewed on both November 14, 2022, and November 22, 2022, and wrote "Dr. Marthakis" and "Teresa – EMT" at the top of both HCRF. ECF 70-2 at 13-14. On November 28, 2022, after Robertson's crutches pass already had expired and he already had fallen in the shower, both HCRF were responded to with an assertion that Robertson "refused to be seen cell side." *Id.*[1]

EMT Liedtke argues summary judgment is warranted in her favor because she was not personally involved in any constitutional violation. ECF 68 at 6-7. Specifically, she provides an affidavit, in which she attests to the following facts: EMT Liedtke is a licensed EMT, and is not part of the "nursing staff" at Indiana State Prison ("ISP"). ECF 67-2 at 1. EMT Liedtke's role at ISP is an assistant to the Health Services Administrator and an assistant to the nursing staff in general. *Id.* Her primary job duties are to triage patients prior to their provider visits, including obtaining vital signs and asking background questions to obtain information for the provider so the provider's exam is more efficient. *Id.* She also assists the nurses' station with whatever the nurses need and helps out with paperwork, including generating written passes for patients to implement the providers' orders. *Id.* at 1-2. Additionally, EMT Liedtke assists with responding to patients' HCRF, but only when the HCRF involves matters related to the Chronic Care Clinic. *Id.* at 2. Specifically, all HCRF are first reviewed and triaged by nursing staff, and only HCRF dealing with issues related to the Chronic Care Clinic are forwarded to EMT Liedtke to address. *Id.* The Chronic Care Clinic is a program in

---

[1] It is unclear from the record who responded to these HCRF, but both responses are signed with a signature ending in "NP," suggesting it was a Nurse Practitioner who responded to both HCRF. *See* ECF 70-2 at 13-14.

5

which patients with chronic illnesses are automatically scheduled to see their provider every 90 days. *Id.* If a HCRF submitted by a patient deals with a Chronic Care Clinic issue, that HCRF is forwarded to EMT Liedtke and she communicates with the provider on how to respond to the request. *Id.* A HCRF dealing with a request for a patient's crutches pass to be renewed would not be a Chronic Care Clinic issue, as crutches are generally an acute issue, not a long-term chronic issue. *Id.* If Robertson submitted a HCRF specifically directed to EMT Liedtke regarding the renewal of his crutches pass, that HCRF would not have been given to or processed by EMT Liedtke, but rather would have been handled by nursing staff. *Id.* at 2-3. This is true even if Robertson is a patient enrolled in the Chronic Care Clinic. *Id.* at 2. EMT Liedtke has no recollection of ever receiving a HCRF related to Robertson's claim that his crutches pass was about to expire, and if she had received such a HCRF she would have given it to nursing staff to handle because it did not involve a Chronic Care Clinic issue. *Id.* at 3. Because a crutches pass is not a Chronic Care Clinic issue, EMT Liedtke would not be the person to make any determination or do anything with that HCRF. *Id.* at 3-4. If Robertson submitted a HCRF requesting that his crutches pass be renewed and never received any response, it is likely because the provider opted not to renew his crutches pass. *Id.* at 4.

Here, EMT Liedtke has provided evidence she was not personally involved in any constitutional violation, as she was not involved in or responsible for responding to Robertson's HCRF related to his crutches pass renewal. *See Kuhn*, 678 F.3d at 556 ("An individual cannot be held liable in a § 1983 action unless [she] caused or participated in an alleged constitutional deprivation."). To survive summary judgment, Robertson

6

must therefore provide evidence raising a genuine dispute whether EMT Liedtke was personally involved in a constitutional violation.

In his response, Robertson argues EMT Liedtke was personally involved in failing to respond to his HCRF for several reasons. First, Robertson argues he specifically addressed both of his HCRF to EMT Liedtke. ECF 70 at 16; ECF 70-2 at 13-14. It is true Robertson wrote "Teresa – EMT" at the top of both HCRF. *See* ECF 70-2 at 13-14. But EMT Liedtke attests these HCRF would not have been sent to her even if Robertson addressed them to her because they did not relate to a Chronic Care Clinic issue. ECF 67-2 at 2-3 ("if Mr. Robertson submitted a Request for Healthcare specifically directed to me regarding any medical issue other than a Chronic Care Clinic issue, that Request for Healthcare would not have been given to me or reviewed or processed by me, but it would have been handled by nursing staff."). Robertson does not dispute that EMT Liedtke only handles HCRF dealing with Chronic Care Clinic issues. Rather, he argues his need for crutches *was* a Chronic Care Clinic issue and, therefore, the HCRF should have been forwarded to EMT Liedtke. ECF 70 at 3. But Robertson's vague belief that his need for crutches was a Chronic Care Clinic issue and his HCRF should have been sent to EMT Liedtke is insufficient to create a genuine dispute. The undisputed evidence supports EMT Liedtke's attestation that a HCRF requesting the renewal of a crutches pass is not a Chronic Care Clinic issue and would not have been sent to her (ECF 67-2 at 3-4), as the signature on both HCRF suggests they were responded to by nursing staff and neither HCRF contains any indication it was ever seen or responded to by EMT Liedtke. *See* ECF 70-2 at 13-14. Robertson attempts to dispute this evidence

7

by citing to documents indicating EMT Liedtke "generated" his prior crutches pass renewals. ECF 70-2 at 5-7. But this is consistent with EMT Liedtke's attestation that her job duties included generating written passes for patients that were ordered by their providers. ECF 67-2 at 1-2. The fact that EMT Liedtke generated Robertson's prior crutches passes, which were ordered by Robertson's providers, does not show EMT Liedtke was responsible for responding to Robertson's HCRF regarding the renewal of his crutches pass.

Accordingly, EMT Liedtke has provided evidence showing she was not personally involved in any constitutional violation, as she was not responsible for handling or responding to Robertson's HCRF related to the renewal of his crutches pass. In his response, Robertson does not raise any genuine dispute, and none of the evidence he provides disputes EMT Liedtke's testimony that she was not personally involved in or responsible for handling or responding to his HCRF. Summary judgment is therefore warranted in favor of EMT Liedtke on this claim.

*Nurse Hacker*

Robertson is proceeding against Nurse Hacker "for not treating his post-fall injuries on November 23, 2022, in violation of the Eighth Amendment[.]" ECF 8 at 9. Specifically, Robertson alleged in his complaint that he spoke with Nurse Hacker on November 23 during medication pass and informed her that he had fallen down and injured himself and gave her a HCRF detailing his symptoms, but she left him in his cell and did not provide him medical care. *Id.* at 3.

Nurse Hacker provides an affidavit, in which she attests to the following facts: Nurse Hacker is a registered nurse at ISP. ECF 67-1 at 1. In November 2022, she was assigned as the medication nurse in D-Cell house, which is the segregation unit at ISP. *Id.* at 2. She was responsible for passing out medication to all of the inmates in D-Cell house who were on medication, which took up her entire shift. *Id.* During medication pass, she prioritized distributing medication to the numerous inmates that relied on their daily and timely medications. *Id.* Nurse Hacker needed to pass out the medications in a timely and orderly fashion, and it is not within the standard of nursing care to stop and address medical requests from inmates while passing out medications. *Id.* While passing out medication, Nurse Hacker would only stop dispensing medication to address a medical request or complaint from an inmate if it was an emergency situation where the inmate required immediate medical treatment. *Id.*

On November 23, 2022, Nurse Hacker passed out medications to the inmates in D-Cell house, though the Medication Administration Record indicates she did not pass out any medications to Robertson. ECF 67-1 at 2; ECF 67-3 at 1. Robertson was on medication, but the medical records indicate he received his medications from a different nurse that day. *Id.* The Medication Administration Record indicates Nurse Hacker passed out medication to Robertson on November 5 and November 6, but not on November 23. *Id.* Nurse Hacker does not recall Robertson handing her a HCRF on November 23, but if Robertson did hand her a HCRF on that day, she would have delivered it to the nurse's station once she was done passing out medications. ECF 67-1 at 3-4. Moreover, if Robertson complained to Nurse Hacker about any injuries while she

9

was passing out medication that day, she would have told him to submit a HCRF if it was not a medical emergency that warranted her immediately stopping her medication pass. *Id.* at 4. Robertson did not present to Nurse Hacker with any medical emergency or medical issue that required immediate treatment on November 23, or she would have made sure he was seen immediately. *Id.*[2]

Robertson was seen by non-party Nurse Irasema Hernandez on November 26, 2022, regarding his complaint that he fell on November 23 and hurt his back, thigh, and face. ECF 67-1 at 4-5; ECF 67-3 at 5-6. Nurse Hernandez renewed Robertson's crutches pass, administered a Toradol injection for pain, gave him ice for bruising, placed him on the list to see a provider, and returned him to his cell. *Id.* Nurse Hacker attests that the result of Robertson's November 26 nurse visit shows he did not have any emergency medical condition on November 23 that would have warranted her stopping her medication pass to attend to him. ECF 67-1 at 5.

Nurse Hacker argues summary judgment is warranted in her favor because she did not violate Robertson's constitutional rights by completing her medication pass to other patients while Robertson was not in an emergency condition. ECF 68 at 7-8. She argues that, accepting as true that Robertson handed her a HCRF regarding his fall and injuries on November 23, she did what she was supposed to do by completing her

---

[2] In his response, Robertson asserts it was Nurse Hacker who passed out his medications to him on November 23, and that he reported his symptoms to her and provided her with a HCRF at that time. Nurse Hacker does not dispute that it's possible Robertson spoke with her and provided her with a HCRF on November 23 while she was passing out medications. Any dispute over whether Nurse Hacker passed out medications directly to Robertson on November 23 is not material.

10

medication pass and turning Robertson's HCRF in to the nurse's station, which led to him being treated by Nurse Hernandez three days later. *Id.*

In his response, Robertson argues he spoke with Nurse Hacker on November 23 and handed her a HCRF stating his leg would not support him, he was in severe pain, and he fell down and hit his head. ECF 70 at 6-8. He argues Nurse Hacker read the HCRF he gave her and told him she would get him medical help. *Id.* at 6. Robertson concludes that Nurse Hacker violated policy by not getting him immediate medical attention once she read his HCRF. *Id.* at 6, 8-10, 16-17.

Here, construing the facts in the light most favorable to Robertson, the court accepts as true that on November 23, 2022, Nurse Hacker stopped and talked with Robertson during medication pass, Robertson handed her a HCRF detailing his injuries, and Nurse Hacker read Robertson's HCRF and told him she would get him medical help. But accepting these facts as true, it does not show Nurse Hacker was deliberately indifferent to Robertson's serious medical need. Specifically, Nurse Hacker testified that if Robertson handed her a HCRF on November 23, she would have finished passing out medication and then turned the HCRF in at the nurse's station. There is no evidence disputing this testimony, as it is undisputed Robertson was scheduled for treatment and had his injuries addressed by Nurse Hernandez three days later. Nurse Hacker also testified it would have been improper for her to have stopped passing out medication to the other inmates to address Robertson's complaints because there's no evidence Robertson had a medical emergency. The record also supports this testimony, as Robertson's complaints, while serious, did not require emergency medical treatment.

11

Rather, his complaints were addressed by Nurse Hernandez on November 26 by providing him ice and a Toradol injection, renewing his crutches pass, scheduling him to see a provider, and returning him to his cellhouse. While Robertson would have preferred that Nurse Hacker had paused her medication pass and provided him immediate medical care on November 23, there's no evidence by which a reasonable jury could conclude that Nurse Hacker's conduct of completing medication pass and then turning Robertson's HCRF into the nurse's station so that he could be scheduled to receive treatment for his non-emergency conditions was "plainly inappropriate," violated any standard of care, or exhibited "a total unconcern for [his] welfare in the face of serious risks." *See Stockton*, 44 F.4th at 615; *Ciarpaglini*, 352 F.3d at 331; *see also Knight v. Wiseman*, 590 F.3d 458, 466 (7th Cir. 2009) (an inmate who complains that a delay in medical treatment rose to a constitutional violation must introduce "verifying medical evidence that shows his condition worsened because of the delay."). Therefore, summary judgment is warranted in favor of Nurse Hacker on this claim.

For these reasons, the court:

(1) GRANTS the defendants' motion for summary judgment (ECF 67); and

(2) DIRECTS the clerk to enter judgment in favor of the defendants and against Herbert E. Robertson and to close this case.

SO ORDERED on February 2, 2026.

    s/ Holly A. Brady
    CHIEF JUDGE HOLLY A. BRADY
    UNITED STATES DISTRICT COURT